```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
```

JOHN THE GREEK CO., INC.,

                Plaintiff,

   -against-

EATERNITY LLC d/b/a LOCAL THYME and STEFAN HILDERBRANDT,

                Defendants.

```
----------------------------------------------------------------x
```

**Decision & Order**
16-cv-919 (ADS)(AYS)

**FILED**
**CLERK**

2/10/2017 1:55 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

APPEARANCES:

**Kreinces & Rosenberg, P.C.**
*Attorneys for the Plaintiff*
900 Merchants Concourse, Suite 305
Westbury, NY 11590
        By:   Leonard Kreinces, Esq.
                Howard Rosenberg, Esq., Of Counsel

**The Shell Law Firm**
*Attorneys for the Defendants*
11 Broadway, Suite 615
New York, NY 10004
        By:   Martin A. Shell, Esq., Of Counsel

**SPATT, District Judge:**

       In this case, the Plaintiff John the Greek Co., Inc. (the "Plainitff") alleges that the Defendant Eaternity LLC d/b/a Local Thyme ("Eaternity") and its principal, the individual Defendant Stefan Hilderbrandt ("Hilderbrandt"), failed to pay for certain wholesale quantities of produce, in violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*

       Presently before the Court is a motion by the Plaintiff for summary judgment under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56.

       For the reasons that follow, the Plaintiff's motion is granted in part and denied in part.

## I. Background

The Plaintiff is a resident corporation with a principal place of business in Port Washington, New York.

Between July 17, 2014 and March 6, 2015, the Plaintiff sold to the corporate Defendant wholesale quantities of perishable agricultural commodities in the total amount of $73,643.47. However, to date, Eaternity has not paid for these goods.

On those facts, the Plaintiff seeks to enforce the provisions of PACA in order to recover from the Defendants the unpaid sum, together with statutory interest and attorneys' fees.

Apparently, the reason for Eaternity's non-payment is the fact that it is currently in financial straits and on the verge of bankruptcy.

Nevertheless, the Plaintiff contends that the individual Defendant Hilderbrandt is sufficiently connected with Eaternity to render him personally liable for the amounts owed. In this regard, the Plaintiff asserts that Hilderbrandt is the chief executive officer, director, and shareholder of the corporate Defendant. In this capacity, the Plaintiff asserts that Hilderbrandt signs checks on behalf of Eaternity and determines which of the company's creditors to pay. The Plaintiff asserts that Hilderbrandt is the sole person responsible for determining the conduct of the business and payment to creditors.

In support of its motion, the Plaintiff submits a document entitled "Movant's Statement of Material Facts and Non-Movants' Counterstatement," dated June 15, 2016 (the "June 2016 Counterstatement"), in which the Defendants concede **some of** these facts.

However, in opposition to the present motion, the Defendants submit a different document, entitled "Defendants' Counterstatement of Material Facts," which is dated October 6, 2016 (the "October 2016 Counterstatement"), and which disputes **some of** the same facts they apparently conceded four months earlier.

In particular, the October 2016 Counterstatement refers to an affidavit by Hilderbrandt, in which he denied that he is an owner of the corporate Defendant. In support of this denial, he submitted a copy of Eaternity's December 13, 2013 operating agreement indicating that Marita Hilderbrandt and Juanita Korelitz are the company's sole members. Thus, in his affidavit, Hilderbrandt stated that he has no authority over the payment of invoices, and that the company's owners control all financial decisions. Further, in his affidavit, Hilderbrandt stated that his role is to oversee Eaternity's operations. In that capacity, he concedes that he has check-writing authority to pay company debts, but asserts that all such payments require final approval by the company's owners.

Based on these factual averments, the Defendants contend that Hilderbrandt's role in the company is too remote from any financial decision-making to hold him personally liable for the alleged PACA violations in this case.

## II. DISCUSSION

### A. The Standard of Review

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As noted above, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.' " *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

" '[A]t the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

B.  The Plaintiff's Claims under PACA

At the outset, the Court notes that, in an apparent effort to preserve its few remaining assets, the corporate Defendant Eaternity does not oppose the relief sought by the Plaintiff. *See* Defs. Memo of Law at 5 (stating that "Eaternity is on the verge of bankruptcy and while it could dispute the amount Plaintiff asserts is due[,] Eaternity does not oppose Plaintiff's instant motion in any [*sic*] effort to preserve whatever assets it still has").

Accordingly, there being no genuine issues of material fact regarding the liability of the corporate Defendant under PACA, the Plaintiff's motion for summary judgment on its claims against Eaternity LLC is granted in its entirety.

Rather, the sole contested issue in this motion is whether summary judgment is warranted on the Plaintiff's PACA claims against the individual Defendant Hilderbrandt. As set forth more fully below, the Court answers this question in the negative.

1.  The Applicable Legal Principles

Congress enacted PACA "to provide unpaid produce sellers with greater protection from the risk of default by buyers." *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

To that end, "purchasers of produce on credit are required to hold the produce and its proceeds, including accounts receivable and derivatives, 'in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers.'" *Id.* at 486 (quoting 7 U.S.C. § 499e(c)(2)).

In general, a PACA trust "'arises from the moment perishable goods are delivered by the seller,'" *Belleza Fruit, Inc. v. Suffolk Banana Co.*, No. 12-cv-3033, 2012 U.S. Dist. LEXIS 93117, at *16 (E.D.N.Y. July 5, 2012) (quoting *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 8 (1st Cir. 1999)), and, if a buyer fails to make full payment within ten days after accepting the produce, *see*

7 C.F.R. § 46.2(aa)(5), civil liability is triggered, *see Belleza Fruit, Inc.*, 2012 U.S. Dist. LEXIS 93117, at *17 (quoting *Baiardi Food Chain v. United States*, 482 F.3d 238, 241 (3d Cir. 2007)).

Relevant here, "[t]he case law is clear . . . that individual shareholders, officers and/or directors of a corporation that is subject to PACA can face individual liability for breach of their fiduciary duty to PACA Claimants." *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr. Inc.*, No. 04-cv-2666, 2005 U.S. Dist. LEXIS 8976, at *15 (S.D.N.Y. May 16, 2005) (Report and Recommendation) (collecting cases), *adopted*, 2005 U.S. Dist. LEXIS 12848 (S.D.N.Y. June 27, 2005); *see Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F. Supp. 2d 131, 145 (E.D.N.Y. 2003) (noting that "several courts in this circuit and others, have held that in PACA cases, individuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties" (citations omitted)).

In particular, "an individual who is in a position to control the assets of a PACA trust and fails to preserve those assets may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Weis-Buy Farms, Inc. v. Quality Sales LLC*, No. 11-cv-2011, 2012 U.S. Dist. LEXIS 11178, at *27 (D. Conn. Jan 31, 2012) (citations omitted). "[I]ndividual liability turns not on whether the individual nominally held an officer position nor even the size of his or her shareholding, but whether he or she had the authority to direct the control of the PACA trust assets." *Id.*

In this regard, "[w]hile the corporation will be held liable in the first instance for the debt owed, individuals in a position to control trust assets who breached their fiduciary duties may be held secondarily liable for whatever amount of the debt is not recoverable from the corporation." *Id.* at *27-*28 (citing *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 349-50 (S.D.N.Y. 1993)).

5

### 2. Application to the Facts of this Case

Applying these standards, the Court holds that a question of fact exists with regard to whether, at the relevant times, Hilderbrandt was in a position to direct the control of the PACA trust assets in this case.

In particular, as outlined above, directly contrary to the Plaintiff's allegations, Hilderbrandt has submitted a sworn affidavit denying an ownership interest in the corporate Defendant and/or any authority to make final decisions regarding the payment of trade creditors. Consequently, the issue of whether he may properly be held individually liable for the corporation's conceded PACA violations will turn on facts decided by a jury after a trial.

In reaching this conclusion, the Court takes note of the somewhat troubling manner in which the Defendants and their counsel have conducted themselves in this case. In particular, during discovery, the Defendants failed to produce any evidence tending to either disprove the Plaintiff's allegations or to establish an affirmative defense. Further, in response to the Plaintiff's 56.1 Statement, the Defendants submitted the June 2016 Counterstatement unreservedly conceding the material facts required to hold Hilderbrandt personally liable. They permitted both the Plaintiff and the Court to rely on those concessions during an in-person pre-motion conference; and then further permitted the Plaintiff to rely on them in preparing and filing a motion for summary judgment.

Only after the Plaintiff filed its motion did the Defendants apparently change their version of events, and attempt for the first time to support their new defense theory with never-before-seen assertions of fact and documentary evidence. With regard to the obvious inconsistency of their positions, defense counsel Martin A. Shell, Esq. submitted a declaration of his own, in which he stated simply that the June 2016 Counterstatement conceding all of the relevant facts had been filed "inadvertently."

Further, he provided no explanation for the Defendants' apparent failure to produce Eaternity's operating agreement in response to pertinent discovery demands, despite the fact that

this highly relevant document was executed in December 2013 and presumably was in the Defendants' possession long before this case was commenced in February 2016.

While the Court is reluctant to countenance such conduct, it is mindful of the strong preference in this Circuit for litigation disputes to be resolved on the merits. *See Cody v. Mello*, 59 F.3d 13, 15 (2d Cir 1995). Therefore, to the extent that the Defendants' inconsistent positions may have raised questions going to their credibility, the Court finds that such determinations are best left to the trier of the facts, and are improper to resolve at the summary judgment stage. *See Redd*, 678 F.3d at 174 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

Accordingly, the Plaintiff's motion for summary judgment on its claims against Stefan Hilderbrandt is denied.

### III. CONCLUSION

Based on the foregoing, the Plaintiff's motion for summary judgment is granted in part and denied in part.

In particular, the portion of the motion seeking summary judgment as against the corporate Defendant Eaternity LLC is granted, and the portion seeking summary judgment as against the individual Defendant Hilderbrandt is denied.

The Court defers its ruling on the appropriate measure of damages, including determinations of the Plaintiff's entitlement to interest and attorneys' fees, pending the outcome of a trial on the remaining claims against Hilderbrandt. In that regard, the parties are hereby referred to United States Magistrate Judge Anne Y. Shields for the completion of any remaining discovery and the preparation of a pre-trial order.

It is **SO ORDERED:**

Dated: Central Islip, New York
February 10, 2017

／s／ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge